

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS



GROVER SELLERS
ATTORNEY GENERAL.

Honorable C. S. Clark
Chairman, Board of Water Engineers
Austin, Texas

Dear Sir:

Opinion No. 0-5938

Re: Does Article 7880-3(A)
V.A.C.S., contemplate that
a Master District may be
created so as to embrace in
its boundaries existing
water control and improve-
ment districts and fresh
water supply districts and
also additional territory
not in any organized
district? And related
questions.

We acknowledge receipt of your request for an opinion on a number
of questions pertaining to the authority of the Board of Water Engineers to
create Harris County Water Control and Improvement Master District No. 1.
We have been furnished with Briefs on the questions by Judge James V. Allred
of Houston and Honorable J. E. Sturrock, Statistician of your Board, and by
Honorable C. D. Jessup of Houston. We have given careful consideration to
the arguments for the proponents and opponents of this proposed District and
we agree with both in some instances and disagree with both in others, but
in view of the fact that we have determined to answer questions numbered one
and two as hereafter indicated we deem it unnecessary at this time to answer
the other questions submitted by you.

Since, as stated by you, this is the first petition for the creation
of a master district which has been submitted to your Board, there have been
no adjudicated cases dealing with the subject. We think that Mr. Sturrock
has answered questions one and two in accordance with our views and we are
therefore taking the liberty of quoting extensively from his Brief.

The law is well settled that in construing a statute the Legislative
intent is given primary consideration. In 39 Tex. Jur. #90, page 166, it is
said that:

"The intention of the Legislature in enacting a law is the
law itself; 'the essence of the law', and 'the spirit which gives
life' to the enactment. Hence, the aim and object of construction

is to ascertain and enforce the legislative intent, and not to defeat, nullify or thwart it".

"When the intent is plainly expressed in language of a statute, it must be given effect without attempting to construe or interpret the law. On the other hand, when it is necessary to construe an act in order to determine its proper meaning, it is settled by a host of decisions that the court should first endeavor to ascertain the legislative intent, from a general view of the whole enactment. Such intent having been ascertained, the court will then seek to construe the statute so as to give effect to the purpose of the legislature, as to the whole and each material part of the law, even though this may involve a departure from the strict letter of the law as written by the Legislature.

"This is the fundamental canon and the cardinal, primary and paramount rule of construction, which should always be closely observed and to which all other rules must yield. Indeed, in the construction of civil enactments, the courts are expressly commanded to 'look diligently' for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy." (Underscoring ours). See Article 10 V.A.C.S.

Keeping in mind the above quoted "fundamental canon and the cardinal, primary and paramount rule" of statutory construction, we will discuss questions numbers one and two.

### Question No. 1

"Does Article 7880-3 (a) V.A.C.S., contemplate that a Master District may be created so as to embrace in its boundaries existing water control and improvement districts and fresh water supply districts and also additional territory not in any organized district?"

Article 7880-3, V.A.C.S., is section 3 of Chapter 25, General Laws of the Regular Session of the 39th Legislature, 1925, as amended. Originally section 3 read as follows:

"Sec. 3. Water control and improvement districts may be organized under the provisions of Section 59 of Article 16 of the Constitution for any one or more of the purposes therein provided as follows:

"Including the control, storing, preservation and distribution of its waters and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid,

semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands and other lands needing drainage, the conservation and development of its forest, water and hydro-electric power, the navigation of its coastal and inland waters, and the preservation and conservation of all such natural resources of the State."

Section 4 of said Chapter 25 (Art. 7880-4) prescribes the area or areas that might be included in a water control and improvement district and reads as follows:

"Sec. 4. Such districts may include the area of any county or counties, or any portion thereof, including towns, villages, or municipal corporations. Such districts may include any county, any number of counties, or any political subdivision of the State, and defined district or parts of any or all counties in the State of Texas." (Underscoring ours).

In 1927 the Legislature amended Section 3 of Chapter 25 (Acts 1927, 1st C.S. 40th Leg. ch. 107, p. 496), and added the following language:

"and such districts when organized shall have power to control any shortage or harmful excess of waters by any mechanical means".

In the same Act, the Legislature amended Section 4 (Art. 7880-4) by adding the following language to the original Act:

"and the land composing said districts need not be in one body, but may consist of separate bodies of land separated by land not embraced in the district; provided, however, that each segregated area must cast a majority vote in favor of the creation of the district before such segregated area can be included in the district.

"Provided that no district provided for in this Act shall embrace territory situated in more than one county except by a majority vote of the property tax paying voters residing within the territory in each county sought to be embraced within said District".

Now then let us look for the legislative intent in the passage of the original Sections 3 and 4 and in the amendments adopted thereto.

Under the water control and improvement district Act, as amended in 1927, an ordinary water control and improvement district could, and may now, be created to embrace "any county and number of counties or any political subdivision of the State, and defined districts or parts of any or all counties in the State of Texas", that is--embrace all the territory now

proposed to be included in the Harris County Water Control and Improvement Master District No. 1. But there was no provision in the law authorizing existing districts to act jointly, pool and coordinate their facilities and resources, and operate works for the common benefit of the several districts. Therefore the Legislature, in 1929 (Acts 1929, Regular Session 41st Leg. Ch. 280, p. 578) further amended Section 3 (Art. 7880-3) for the sole purpose of enabling districts already created, or that may hereafter be created, "under Chapter 25 or under either Chapter 2, 3, 4, 6, 7 or 9 of Title 128", to organize themselves into a "Master District" in order to "pool their resources when necessary economically to make preliminary surveys, to adopt a plan to coordinate the plants, improvements and facilities of the several constituent districts, to the improvements and facilities proposed to be constructed and furnished by the Master District, to provide improvements for the common benefit of the several districts, or to enable such districts jointly to make purchases, or to maintain, or to operate works for the common benefit of the several districts". (See Art. 7880-3(c).

Section 4 (Art. 7880-4) was not amended by the 1929 Act, which we think clearly shows that the Legislature intended that only those areas embraced in one or more districts created and operating under Chapter 25 or under either Chapter 2, 3, 4, 6, 7, or 9 of Title 128, may be included in a Master District, otherwise, it would have amended Section 4 so as to provide that districts to be Master Districts may embrace areas included in defined districts as well as areas not included in any defined district as it did do in the passage of Art. 7622a, V. A. C. S., in 1927, relating to water improvement districts.

The language used in that part of Art. 7880-3 relating to the creation of "Master District", such as "(b) Districts to be created as Master Districts. . ."; "(c) Districts to be created as Master Districts may be created in order to enable districts to pool their resources, etc. . ."; (d) "Such Districts when created shall have the power to levy and collect taxes, . . . which shall be in addition to other taxes that may be lawfully levied by the several districts constituting a part of such Master District"; "(e) . . . constitute a separate voting unit, and no existing district may be included in a Master District unless the proposal so to do is approved by a majority of the voting qualified electors of such constituent district," clearly dictates a negative answer to Question No. 1 and it is so answered.

### Question No. 2

"Does the statute contemplate that an ordinary water control and improvement district may be designated and act as a Master District for itself and other districts, or does it contemplate that a separate Master District shall be created to Act for all?"

The History of the water control and improvement district Act leading up to the amendment of Section 3 (Art. 7880-3) thereof in 1929, and the express provisions of said section, answer this question to the effect that

the statutes contemplate that a separate Master District shall be created to act for all constituent districts, which is a further reason why Question No. 1 should be answered in the negative. The petition now before the Board seeks the creation of Harris County Water Control and Improvement Master District No. 1, having all the powers of an ordinary water control and improvement district over the unorganized territory, and, at the same time as a Master District for itself and 12 existing districts. There is no authority, express or implied in the water control and improvement district Act for any such set-up.

We, therefore, hold that the correct answer to question No. 2 is that the statutes contemplate a separate Master District shall be created to act for all constituent districts in matters of common benefit to the several districts.

Yours very truly

APPROVED MAY 15, 1944

ATTORNEY GENERAL OF TEXAS

/s/ Geo. P. Blackburn

(Acting) ATTORNEY GENERAL OF TEXAS

By /s/ Fagan Dickson
Fagan Dickson
Assistant

FD:ncd:lm

APPROVED
OPINION
COMMITTEE
BY /s/ OS
CHAIRMAN